**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3977-23

H.L., H.S., AND H.D.,
NAMES BEING FICTITIOUS,

    Plaintiffs-Appellants,

v.

GIANFRANCO MAUCIONE,

    Defendant,

and

SELECTIVE INSURANCE
COMPANY OF AMERICA and
SELECTIVE WAY INSURANCE
COMPANY,

    Defendants-Respondents.

_____

        Argued March 24, 2026 – Decided July 31, 2026

        Before Judges Sumners, Chase and Augostini.

        On appeal from the Superior Court of New Jersey, Law
        Division, Essex County, Docket No. L-4567-15.

Jake W. Antonaccio argued the cause for appellants (Clark Law Firm, PC, attorneys; Jake W. Antonaccio and Gerald H. Clark, of counsel and on the briefs).

Michael J. Marone argued the cause for respondents (McElroy Deutsch Mulvaney & Carpenter LLP, attorneys; Michael J. Marone and Michael D. Celentano, of counsel and on the brief).

PER CURIAM

This insurance indemnification declaratory judgment appeal arises from defendant Gianfranco Maucione's sexual harassment of then sixteen-year-old plaintiff H.L., who was his former student at Henry P. Becton Regional High School. Over an approximately eight-month period, Maucione repeatedly texted and called H.L., sent her sexually explicit texts, gave her rides in his car, hugged and kissed her, and pressured her to send him sexually explicit photos of herself. After H.L. and her parents, H.S. and H.D., settled their federal sexual harassment lawsuit against Maucione, he assigned his rights for insurance coverage through his employer, Carlstadt-East Rutherford Regional Board of Education's (Board) Commercial General Liability Coverage (CGL) and Abuse/Molestation Liability Coverage (abuse policy) with defendant Selective Insurance Company and Selective Way Insurance Company (collectively Selective).

2

After Selective declined to indemnify Maucione, H.L. brought this declaratory judgment action seeking to compel indemnification for the settled federal action. The motion judge granted Selective summary judgment, finding that Maucione was not entitled to indemnification under Selective's insurance policy. We affirm.

I.

The facts are essentially undisputed. Beginning in the summer of 2009, and continuing until late January of 2010, Maucione began making inappropriate comments and sending inappropriate texts to H.L. For example, Maucione:

- Saw H.L. running on the school track, and texted her later that day stating: "You have a hot banging body";

- Texted H.L. asking if she wanted to go to the track in Hasbrouck Heights but drove her around in his car for fifteen minutes instead;

- Repeatedly texted H.L. between September and November of her junior year, and called her if she didn't answer;

- Told H.L. that her boyfriend was "pathetic" and "weak" and "ask[ed] why [she] was with him";

- Eavesdropped on H.L.'s conversation with her boyfriend about lingerie, and texted her that night: "Oh, so you get to wear that for [your boyfriend], but you can't wear that for me? I'll buy you one.";

3

A-3977-23

- Texted H.L. that he was having sexual dreams about her, sent her a picture of his "waist up and just a towel on" to show that he had "lost weight"; and

- Openly asked H.L. in the school hallway why she wouldn't return his calls.

H.L. claimed that Maucione made physical contact with her on one occasion. In November of 2009, she was at a party and Maucione repeatedly texted her asking about her whereabouts. After H.L. told him that she was "walking home," he drove to her location, told her to get in the car, and drove her around on Route 21 for twenty minutes. When he dropped her off home, he "asked for a hug good[]bye and then . . . I went for the hug good[]bye and he kissed me. I don't remember if it was cheek or lip, I honestly don't remember . . . I just remember he kissed me." Eventually, when H.L. informed the school about Maucione's conduct, the school asked Maucione to resign.

Maucione was arrested and charged with: official misconduct, N.J.S.A. 2C:30-2; aggravated criminal sexual contact, N.J.S.A. 2C:14-3(b), with a minor because he was a teacher with supervisory and disciplinary power over H.L.; endangering the welfare of a child, N.J.S.A. 2C:24-4(a), because his conduct as a caregiver "impair[ed] or debauch[ed]" H.L.'s morals; and tampering with witnesses and informants, N.J.S.A. 2C:28-5(a). On April 8, 2011, Maucione

A-3977-23

pled guilty to third-degree official misconduct, N.J.S.A. 2C:30-2.[1] Two months later, he was sentenced to five years' probation, ordered to forfeit his teaching certificates, and permanently disqualified "from holding any position of honor, trust or profit under this State or any of its administrative or political subdivisions pursuant to N.J.S.A. 2C:51-2d."[2]

On April 25, 2011, Selective declined to defend and indemnify Maucione. In its letter to Maucione, Selective stated:

> [The Board] has reported that you were employed as a teacher at Becton Regional High School, you were arrested on 1/30/2010 and charged with exchanging sexually explicit text messages and photos with a [sixteen] year old female student. The attorney representing [H.L.] is alleging that the claimant suffered psychological damages, trauma and emotional distress. We have now been advised that on April 8, 2011[3] you plead guilty to a charge of official misconduct relating to the above charges.

---

[1] The plea hearing transcript reflects that Maucione set forth the factual basis for the crime in a stipulation rather than doing so in court. However, the stipulation is not in the record.

[2] Maucione's teaching certificates were revoked on December 13, 2012. In re Certificates of Gianfranco Maucione, No. 1011-199 (Bd. of Exam'rs Dec. 13, 2012).

[3] Maucione's judgment of conviction mistakenly provides his plea date was April 26, 2011, but his plea occurred on April 8, 2011.

A-3977-23

Selective determined Maucione's conduct did not fall within the coverage parameters of the Board's CGL policy or abuse policy.

On January 26, 2012, H.L. and her parents, H.S. and H.D., filed a federal district court lawsuit against Maucione, Board Superintendent Paul Saxton, Becton Regional High School and its principal, David Mango, and school administrators, Paul Saxton and Bruce Young. Plaintiffs alleged that Maucione used his authority to sexually harass her and engage in improper conduct and that Maucione was not properly supervised. Selective provided defense or liability coverage for all defendants except Maucione.

In June 2015, H.L., H.S., and H.D.[4] filed a Law Division declaratory judgment action against Maucione and Selective alleging that he acted negligently and engaged in sexual misconduct against her while employed as a teacher at Becton High School and that Selective should indemnify Maucione for his conduct. H.L. claimed that Maucione's harassment caused her "to suffer permanent and irreparable psychological and/or emotional injury, anguish, pain and suffering, intimidation, fear, loss of enjoyment of life and other damages."

---

[4] Hereafter, references to plaintiffs will only be to H.L.

On April 30, 2016, H.L. settled her federal action against the Board, Mango, and Saxton for $200,000, which was paid by Selective. That same day, H.L. and self-represented Maucione executed a Griggs[5] settlement agreement regarding the federal claims against Maucione. He agreed to pay $500,000, assign his rights under Selective's insurance policies, and H.L. agreed to enforce the judgment against Selective.

In this action, over a year later, Selective moved for summary judgment not to defend or indemnify Maucione and H.L. cross-moved for summary judgment for Selective to defend or indemnify Maucione. At the conclusion of oral argument on June 28, 2017, the motion judge issued an order and bench decision, requiring Selective to defend Maucione but declining to rule on the indemnity issue, finding the facts needed to be further developed.

On March 5, 2018, the federal lawsuit was dismissed without prejudice, pending a final decision in this action. Thereafter, discovery ensued.

In 2019, Selective moved for summary judgment on the indemnity issue and H.L. cross-moved to require indemnification of Maucione. On March 1, 2019, the motion judge denied both motions. We denied H.L.'s motion for leave to appeal and Selective cross-moved for leave to appeal.

---

[5] Griggs v. Bertram, 88 N.J. 347 (1982).

A-3977-23

In 2023, H.L. renewed her motion for summary judgment and Selective renewed its cross-motion for summary judgment. After a different motion judge heard argument on June 22, 2023, he reversed his decision. On July 12, 2024, the judge issued an order and twenty-one-page statement of reasons denying H.L.'s motion and granting Selective's motion. This appeal followed.

II.

Appellate review of a trial court's summary judgment decision is de novo. DeSimone v. Springpoint Senior Living, Inc., 256 N.J. 172, 180 (2024). Summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment or order as a matter of law." R. 4:46–2(c). "The court's function is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). We "accord no 'special deference' to the 'trial court's interpretation of the law and the legal consequences that flow from established facts.'" Cherokee LCP Land, LLC v. City of Linden Plan. Bd., 234 N.J. 403, 414-15 (2018) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

## III.

On appeal, H.L. argues that Selective's CGL policy covers Maucione's conduct since his actions were not intentional and he caused H.L. to sustain a bodily injury in the form of trichotillomania, emotional anguish, and stress. H.L. contends the motion judge erred in applying the objective intent standard of Maucione's conduct in harming her and instead should have inquired into Maucione's subjective intent in harming her. Alternatively, H.L. maintains that Selective's CGL and abuse policies are illusory and ambiguous and should be interpreted in favor of covering Maucione's conduct. We are unpersuaded.

Selective's CGL policy is a general liability policy that covers bodily injuries and property damage if they are caused by an "'occurrence' that takes place in the 'coverage territory.'" The policy defines a bodily injury as a "bodily injury, sickness or disease sustained by a person" and "death resulting from any of these at any time" and an occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The CGL policy excludes "'[b]odily injury' or 'property damage' expected or intended from the standpoint of the insured." But "[t]his exclusion does not apply to 'bodily injury' resulting from the use of reasonable force to protect persons or property."

9

The CGL policy also contains an endorsement, excluding intentional or negligent conduct involving abuse or molestation:

> This insurance does not apply to "bodily injury," "property damage," or "personal or advertising injury" arising out of:
>
> > 1. The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or
> >
> > 2. The negligent:
> >
> > > a. Employment;
> > >
> > > b. Investigation;
> > >
> > > c. Supervision;
> > >
> > > d. Reporting to the proper authorities, or failure to so report; or
> > >
> > > e. Retention;
>
> of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph 1. above.
>
> For the purpose of this endorsement, abuse means an intentional, inherently harmful act.

Selective's abuse policy covers "'loss' which results from a 'wrongful act.'"

The policy defines a "wrongful act" as:

A-3977-23

a.  Any act of actual or threatened abuse or molestation (Including sexual misconduct or sexual molestation) which results in injury to another, or

b.  The negligent:

(1) Employment;

(2) Investigation;

(3) Supervision;

(4) Reporting to the proper authorities, or failure to so report; or

(5)  Retention;

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph a above.

For the purpose of this coverage, abuse means an intentional, inherently harmful act[.]

The abuse policy excludes coverage for any individual who:

(1)  Participated in or who conspired with or directed a participant in any "wrongful act"; or

(2)  Knowingly allowed any "wrongful act" or failed to report any "wrongful act" to proper authorities.

b. To the cost of defense of, or payment of fines for, any person who actually or allegedly violated any penal or criminal statutes.

11

In declining to defend and indemnify Maucione under the CGL policy, Selective determined his conduct did not constitute "a bodily injury, property damage and/or personal and advertising injury resulting from an occurrence" and the policy excluded coverage for expected or intended injuries. Selective also maintained that Maucione was not covered under its abuse policy because the policy "exclude[d] coverage for actual or threatened abuse or molestation."

Selective's duty to indemnify Maucione requires us to determine whether Maucione intended to injure H.L. when he sexually harassed her. If he did not, Selective has a duty to indemnify. Our courts either inquire into the actor's "subjective intent to injure" or "presume an intent to injure from the objective circumstances." Voorhees v. Preferred Mut. Ins. Co., 128 N.J 165, 184 (1992). Although the "general trend appears to require an inquiry into the actor's subjective intent to cause injury . . . [w]hen the actions are particularly reprehensible, the intent to injure can be presumed from the act without an inquiry into the actor's subjective intent to injure." Ibid.

"The underlying rationale for the inferred intent rule with respect to insurance coverage for sexual assaults is that an adult of ordinary intelligence and experience would undoubtedly know that he 'would and should expect some physical or psychological injury or both, to result from such acts.'" Shelby Cas.

Ins. Co. v. H.T., 391 N.J. Super. 406, 410-11 (App. Div. 2007) (quoting Atl. Emps. Ins. Co. v. Tots & Toddlers Pre-Sch. Day Care Ctr., Inc., 239 N.J. Super. 276, 283 (App. Div. 2007)). Additionally, deciding whether to apply the objective intent standard requires courts to balance the need to deter intentional wrongful conduct, by denying indemnification, with "the desire to compensate innocent victims with insurance proceeds to the extent that compensation will not condone and encourage intentional-wrongful conduct." Id. at 417-18.

In Tots & Toddlers, we applied the objective intent standard to a teacher who sexually abused children in a day care center and presumed his intent to harm. 239 N.J. Super. at 283. We found that it was an "unacceptable conclusion" for an adult "to molest a child and not cause some kind of injury" and reasoned that adults "would and should expect some physical or psychological injury or both, to result from such acts." Id. at 283. In other words, "[i]t is simply against public policy to indemnify a person for a loss incurred as a result of his own willful wrongdoing." Id. at 284.

Since Tots & Toddlers, this court has repeatedly confirmed that an actor's intent to harm another person should be presumed in sexual abuse or harassment cases. In Schmidt v. Smith, we applied the objective intent standard to an employee who assaulted and battered his co-worker, reasoning that his conduct

was so reprehensible that it "compel[led] the conclusion that he expected or intended some harm to ensue from his actions." 294 N.J. Super. 569, 588 (App. Div. 1996). And, in Prudential Prop. & Cas. Ins. Co. v. Boylan, we applied the objective intent standard to a fifteen-year-old who sexually molested a five-year-old girl, reasoning that an individual who is fourteen or older "is presumed capable of understanding that he committed a wrong" and that his actions in having the girl perform oral sex were reprehensible and his intent to harm could be inferred. 307 N.J. Super. 162, 169 (App. Div. 1998).

Giving the plain and ordinary meaning of Selective's CGL and abuse policies, the motion judge correctly held the carrier has no duty to indemnify Maucione for H.L.'s claims. See Longobardi v. Chubb Ins. Co. of N.J., 121 N.J. 530, 537 (1990) ("[T]he words of an insurance policy should be given their ordinary meaning, and in the absence of an ambiguity, a court should not engage in a strained construction to support the imposition of liability."). The CGL policy does not cover any injuries caused by abuse or molestation or negligence claims relating to abuse or molestation. It defines abuse as an "intentional, inherently harmful act," a bodily injury as "sickness or disease sustained by a person, including death," and an occurrence as an "accident." The abuse policy affords broader coverage—it covers negligent conduct associated with abuse

14

and molestation but excludes intentional conduct or conduct where a party knowingly allowed a wrongful act to occur or failed to report abuse to the authorities. Maucione unequivocally engaged in intentional harmful conduct that is excluded from coverage under both policies—he used his supervisory power to sexually harass H.L. through repeated texts and calls, sent and received sexually explicit texts, drove her in his car, and allegedly hugged and kissed her. Moreover, H.L. sustained bodily injuries in the form of trichotillomania, emotional distress, and anxiety.

We reject H.L.'s argument that the motion judge erroneously applied the objective intent standard and inferred Maucione's intent to harm H.L. as a matter of law. Maucione is an educator who should have expected that his conduct in sending sixteen-year-old H.L. sexually explicit text messages, making inappropriate comments, giving her rides in his car with no one else present, and kissing her—all of which was against the school's policy—would emotionally harm her. Our state law is clear that sexual abuse of children is "so inherently injurious that it can never be an accident" and always results in some kind of harm. Voorhees, 128 N.J. at 185. And, as the motion judge aptly observed, "[t]o conclude otherwise [would] ignore the modern-day reality that a sexual predator can effect significant harm with a computer, an email platform, a cell

15

phone and camera, as occurred here." The judge's application of the objective intent standard is consistent with our legal precedent and aligns with New Jersey's public policy of "discouraging unlawful intentional conduct." Shelby Cas. Ins. Co., 391 N.J. Super. at 418.

We recognize that applying the objective intent standard to Maucione's conduct deprives H.L. of additional compensation from Selective for her damages given Maucione's apparent lack of financial resources as evidence by the Griggs settlement. However, H.L. reached a settlement with Selective to compensate H.L. for her negligence claims against the Board and its administrators. We pass no judgment on the soundness of that litigation strategy.

Lastly, we reject H.L.'s assertion that Selective's abuse policy is illusory because it purports to cover loss resulting from abuse or molestation claims, but then "exclude[s] any 'person' who had anything to do with any such 'wrongful act.'" The policy's exclusions, though broad, do not exclude all conduct relating to abuse or molestation; it excludes intentional conduct, but covers claims involving negligent hiring, negligent supervision, or negligent investigation of abuse or molestation. Since there is no ambiguity in the policy terms, the court will not "'write for the insured a better policy of insurance than the one

16

purchased.'" Gibson v. Callaghan, 158 N.J. 662, 670 (1999) (quoting Longobardi, 121 N.J. at 537).

To the extent we have not specifically addressed any of H.L.'s arguments, they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-3977-23